# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRENDA CARR, | ) | 1:08cv0152 BAK (DLB) |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## **BACKGROUND**

Plaintiff Brenda Carr ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On July 7, 2008, the action was reassigned to the Honorable Theresa A. Goldner for all purposes. On April 6, 2009, the action was temporarily reassigned to the Honorable Dennis L. Beck due to Judge Goldner's resignation.

1

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed her application on December 7, 2004, alleging disability since December 7, 2004, due to mental illness. AR 88, 161-166. After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 45, 51-55, 58-62. On June 12, 2007, ALJ Stephen W. Webster held a hearing. AR 331-353. He denied benefits on July 18, 2007. AR 19-30. The Appeals Council denied review on November 19, 2007. AR 8-10.

Hearing Testimony

ALJ Webster held a hearing on June 12, 2007, in Bakersfield, California. Plaintiff appeared with her attorney, Geoffrey Hayden. Vocational expert ("VE") Cheryl Chandler and witness George Carr also appeared and testified. AR 331.

Plaintiff testified that she was born in 1958. She is married and lives with her husband and two of her four children. She weighed 214 pounds and was 5'3" tall. AR 334-335. Plaintiff did not have a driver's license after she lost it five years ago. AR 336. Plaintiff is able to shower and put her clothes on, but cannot fix her hair. Her family helps her with chores and yard work. AR 336. During the day, Plaintiff alternates between watching cartoons with her children and sleeping. She sometimes goes to church. AR 337.

Plaintiff testified that she graduated high school, though she could not remember if she was in special education classes. AR 338, 345. She has been in jail several times, for about five years total. AR 338. When asked about her physical problems, Plaintiff responded that she had "sugar," (diabetes), high blood pressure and high cholesterol. AR 340. Plaintiff also complained of pain in her chest, hands and ankles. AR 342. She has seen a psychologist who put her on medicine for seeing things and hearing voices. She also gets mad very easily. AR 340. Plaintiff currently sees a psychologist twice a month. AR 342.

Plaintiff believed that she could sit on and off for about two hours, stand for 30 minutes to an hour and walk to the front of her yard. AR 343. Her biggest skillet was the heaviest thing

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

she could lift. AR 343. Plaintiff has trouble with concentration and memory and said she cannot remember anything. AR 347. She sometimes wanders away from home. AR 351.

When asked to explain her psychological problems, Plaintiff testified that she sometimes hears voices and sees things. She said she gets mad at the people that she thinks are talking to her and "cuss[es]" them out, which she said is why she has no friends. AR 343. She sees things like snakes, spiders and fires and feels like people are "messing with" her. AR 347. Plaintiff had a long-time problem with drugs and alcohol, including PCP and crack. AR 344. She has attempted suicide two or three times. AR 348. She was also hit in the head with a brick by "a boyfriend or something." AR 350.

Plaintiff testified that she could not read or write and also had problems with her stomach. AR 345. Her feet, ankles and knees swell and she gets sores on her feet. AR 346. She also suffers from headaches and has a sharp pain in her chest and arm. AR 346. Plaintiff explained that some of her medications make her sick and cause her to gain weight. She lays down everyday. AR 347.

Plaintiff's husband, George Carr, also testified. He explained that Plaintiff sometimes talks to herself and gets angry a lot. When she gets angry, she starts seeing things. AR 352-353. Her medications do not take away her hallucinations. AR 353. He also testified that she is sometimes incontinent and one time, she thought it was funny. When she wanders off, he goes and gets her a few blocks down the street. Plaintiff does not currently use any illegal drugs or drink alcohol. AR 354. The last time she was in jail, she was serving time for driving under the influence of alcohol. AR 354. She does very little housework and has problems with her memory. AR 355.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience. This person could lift 20 pounds occasionally, 10 pounds frequently, and sit, stand or walk for six hours out of an eight hour day. This person would be limited to simple, routine and repetitive work. The VE testified that this person could perform work consistent with a light residual functional capacity ("RFC"), including 800,000 positions in

California. Such positions include hand packaging jobs, car wash attendant and production jobs. AR 356-357.

For the second hypothetical, the ALJ asked the VE to assume that this same person would have occasional problems maintaining attention, concentration and pace. The VE testified that this person would not perform any work. AR 357.

Medical Evidence

On March 31, 2003, Plaintiff saw Kimball Hawkins, Ph.D., for a psychological evaluation. Plaintiff reported that she could not read or write. There was "no report of any drug or alcohol use." Plaintiff complained that she was seeing things, having trouble sleeping, having nightmares and crying for no reason. Dr. Hawkins referenced a January 2003 report from the California Department of Corrections that indicated that Plaintiff was diagnosed with a history of amphetamine-induced psychotic disorder, polysubstance dependence and antisocial personality disorder. He also cites a prior assessment he performed in 1999, when he questioned whether Plaintiff performed to the best of her ability. AR 184-185.

On mental status examination, Plaintiff was roughly dressed and groomed and lacked initiative. She demonstrated limited eye contact and behaved in a very incompetent manner (rocking, pulling her shirt up to her chest to expose her stomach, and getting into things unless stopped). Plaintiff was nonresponsive to questions and requests, did not follow directions and was inconsistently responsive. She did not know her age, address, phone number or current date and could not identify a pencil or colors. Dr. Hawkins believed that Plaintiff was malingering and noted that she was uncooperative with the malingering tests. AR 185.

Dr. Hawkins concluded that the testing attempts and interview demonstrated that Plaintiff was malingering. He noted that she may be in need of ongoing medical follow up for the medications she takes. Based on her diagnosis of malingering, Dr. Hawkins could not make any further recommendations. AR 187.

On May 2, 2003, State Agency physician Luyen T. Luu, M.D., completed a Psychiatric Review Technique form and opined that Plaintiff did not have a medically determinable impairment. AR 188.

Progress notes from the California Department of Corrections dated July 22, 2003, indicate that Yvonne Love, Staff Psychologist, believed that Plaintiff had secondary gain issues. There was no evidence of impaired functioning and she was cleared for general population. Plaintiff hesitantly agreed to group treatment. AR 262.

On February 18, 2004, Plaintiff saw Michael Musacco, Ph.D., for a consultive examination. Plaintiff reported that she was often mad and believed that people were mistreating her. Based on discrepancies and her inability to recall certain information, Dr. Musacco noted that he was uncertain about the accuracy of Plaintiff's self-report. Plaintiff acknowledged a history of methamphetamine and PCP use but stated that she had not used in 20 years. Plaintiff reported that she sits around the house during the day and does nothing. AR 191-192. She reported symptoms of depression and gave a vague account of auditory hallucinations. AR 193.

On mental status examination, Plaintiff was oriented to month but misidentified the date and year. Her affect was irritable and she appeared to be malingering or performing below her capabilities. Plaintiff failed the malingering screening test. Her IQ scores fell into the mildly impaired range, but needed to be interpreted with caution due to malingering concerns. AR 192-193. Dr. Musacco diagnosed mood disorder, not otherwise specified, rule out other unknown substance abuse and rule out partial malingering. He also noted that Plaintiff had antisocial personality features. He recommended a payee to ensure that her funds are adequately managed.

Dr. Musacco explained that he was uncertain if her psychological examinations accurately reflected her cognitive functioning, though she appeared genuinely irritable and may have difficulty interacting appropriately with co-workers, supervisors and the public. She may also be vulnerable to antisocial behaviors, which may impact her functioning in a work-like situation. The results indicated gross deficits in her attention/concentration skills, though the results should be interpreted in light of the malingering concerns. Dr. Musacco believed that Plaintiff is probably able to understand, carry out and remember simple and repetitive instructions. He recommended that additional documents be obtained to confirm these findings. AR 195.

On March 8, 2004, State Agency Dr. Luu completed a Psychiatric Review Technique form and opined that an RFC assessment was necessary. AR 197. In so finding, Dr. Luu opined that Plaintiff had mild restrictions in activities of daily living and moderate difficulties in maintaining social functioning. She had mild difficulties in maintaining concentration, persistence and pace. AR 198.

In a Mental RFC Assessment, Dr. Luu determined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions. She was also moderately limited in her ability to interact appropriately with the general public. Dr. Luu believed that Plaintiff had sufficient ability to understand, remember and carry out short, simple instructions, perform activities without additional support and maintain attention in two hour increments. Plaintiff could also ask simple questions or request assistance and could respond appropriately to changes in the work setting. She had an insufficient ability to interact appropriately with the general public. AR 200-202. This opinion was affirmed on November 28, 2005. AR 202.

Treatment notes from the California Department of Corrections from August 2004 through December 2004 reveal that Plaintiff was diagnosed with psychotic disorder, not otherwise specified, depressive disorder, not otherwise specified, and polysubstance dependence. In November 2004, she was stable on her medications. Plaintiff was housed in the mental health treatment population. A note from September 21, 2004, indicated that Plaintiff was medically eligible for full duty. Plaintiff also attended group therapy during this time. AR 208-231.

On June 30, 2005, Plaintiff saw Greg Hirokawa, Ph.D. for a consultive psychiatric examination. Plaintiff reported hearing voices and seeing fire come out of the wall, as well as bugs and snakes. Plaintiff reported that she did nothing around the house. On mental status examination, Plaintiff had poor eye contact and rocked back and forth. At one point, she began talking to herself, though Dr. Hirokawa did not believe it to be reflective of a psychosis. Instead, he believed it was indicative of someone exaggerating symptoms. Her verbal comprehension was poor and her coordination was awkward. Plaintiff's mood was depressed and her affect was restricted. Her intellectual functioning appeared to be in the below average range, and Dr.

1  Hirokawa opined that she may even be mildly to moderately retarded. Her recent memory was
2  poor and her past memory was impaired. AR 296-300.
3     Dr. Hirokawa diagnosed rule out mild mental retardation, rule out partial malingering,
4  rule out psychotic disorder not otherwise specified, and antisocial personality disorder. He noted
5  that although she appeared to exaggerate her symptoms and cognitive performance, he believed
6  that she had a mental impairment (mild to moderate mental retardation). Her auditory and visual
7  hallucinations appeared to be partially exaggerated and did not appear to be consistent with
8  schizophrenia. Dr. Hirokawa opined that Plaintiff's attempts at exaggeration were so poor that
9  he believed there were actual cognitive limitations which would severely restrict Plaintiff from
10 adequately functioning in society. Her compliance with medication and prognosis were poor.
11 AR 300.
12    Dr. Hirokawa opined that Plaintiff was not capable of managing her funds but should be
13 able to perform simple and repetitive tasks. She would have difficulty working with others and
14 accepting instructions from supervisors based on her poor impulse control, poor frustration
15 tolerance and poor coping skills. She could not deal with various changes in the work
16 environment and the likelihood of her emotionally deteriorating was high. She could not
17 maintain regular attendance in the workplace and would have difficulty getting along with others.
18 These functional limitations were based on Plaintiff's limited intellectual functioning, previous
19 history and reported compliance and difficulties by Plaintiff's daughter. AR 300-301.
20    On July 29, 2005, State Agency physician Dr. Luu completed a Psychiatric Review
21 Technique form and opined that Plaintiff had a personality disorder and that an RFC assessment
22 was necessary. AR 302. Dr. Luu opined that Plaintiff had mild restrictions in activities of daily
23 living and moderate difficulties in maintaining social functioning. She had mild difficulties in
24 maintaining concentration, persistence and pace. AR 304.
25    In a Mental RFC Assessment, Dr. Luu determined that Plaintiff was moderately limited in
26 her ability to understand, remember and carry out detailed instructions. She was also moderately
27 limited in her ability to interact with the general public. Dr. Luu believed that Plaintiff had
28 sufficient ability to understand, remember and carry out short, simple instructions, perform

activities without additional support and maintain attention in two hour increments.  Plaintiff could also ask simple questions or request assistance and could respond appropriately to changes in the work setting.  She had an insufficient ability to interact appropriately with the general public.  AR 306-308.

There is an undated Physical Capacities Evaluation in the record completed by Dr. Alvarez.  He noted that Plaintiff has mental conditions that have, in the past, rendered her disabled.  He opined that she could sit for a total of two hours, stand for a total of one hour and walk for a total of one hour.  She could lift up to five pounds frequently and 11-20 pounds occasionally.  Plaintiff could not use her hands for fine manipulation and could occasionally bend, climb and reach.  She could never squat.  AR 317.

On October 18, 2006, Plaintiff underwent a mental health assessment at Kern County Mental Health, performed by Timothy Kuwazaki, an intern.  Plaintiff reported that she experiences auditory and visual hallucinations and that she becomes angry easily.  Plaintiff wanted to get back on her medications, which were stopped when she completed parole in 2006, and see a psychiatrist.  Plaintiff's mood was dysphoric and irritable and her affect was flat.  She was a poor historian and offered vague, inconsistent information.  Plaintiff was not cooperative during the interview and continuously rocked back and forth.  She had intermittent eye contact and her speech was sparse.  Her intelligence appeared to be below average.  Plaintiff's insight and judgment were poor.  AR 318-323.

Mr. Kuwazaki diagnosed malingering, polysubstance disorder (in early partial remission), rule out substance-induced psychotic disorder, and antisocial personality disorder.  AR 323.  After reviewing her treatment records and conferring with Dr. Ruddock, Mr. Kuwazaki determined that Plaintiff did not present with a serious mental illness that would warrant speciality mental health treatment.  Instead, based on Plaintiff's discrepancies and her evaluation results, Mr. Kuwazaki believed that Plaintiff was feigning her symptoms and malingering for secondary gain.  AR 325.  He also believed that many of her hallucinations were substance-induced, though further monitoring was needed.  AR 325.

On November 10 and 28, 2006, Plaintiff saw Amber Ruddock, Ph.D., for a psychological evaluation. Plaintiff complained of auditory and visual hallucinations and reported that she becomes extremely angry if she has to be out of her home for more than a few minutes. On mental status examination, Plaintiff was agitated and became hostile when asked to elaborate. Eye contact was poor and she rarely spoke, though she looked at her daughter to answer most questions. She continuously rubbed her hands all over her body and lifted up her shirt. Her short term memory was impaired, focus and concentration were poor, as were insight and judgment. Plaintiff's test results were characteristic of someone who was feigning a mental illness, with the profile of her scores showing a 100 percent likelihood of feigning. Dr. Ruddock opined that Plaintiff was exaggerating her symptoms and endorsing an unlikely combination of symptoms. Her physical behaviors were inconsistent with her self-report. AR 327-329.

Plaintiff may have been experiencing some symptomology, which would not be unexpected given her 30 year history of drug and alcohol abuse. Dr. Ruddock believed that the onset of her symptoms is more consistent with substance abuse, rather than a separate mental illness. It was possible that Plaintiff's loss of SSI benefits was a driving factor behind her malingering. She diagnosed Plaintiff with malingering, rule out substance induced psychotic disorder, and antisocial personality disorder. AR 329-220.

ALJ's Findings

The ALJ determined that Plaintiff's obesity and diabetes were severe impairments. In analyzing her mental impairment, the ALJ found that Plaintiff had "an established pattern of malingering and exaggeration of her symptoms and illness in an attempt to obtain financial or other benefits from others." AR 25. He therefore found that Plaintiff had failed to provide objective medical evidence establishing a severe mental impairment. AR 25. Given Plaintiff's physical impairments, the ALJ found that Plaintiff retained the RFC to perform light work that is simple and repetitive in nature and does not include lifting and carrying more than 20 pounds occasionally or 10 pounds frequently, or standing, walking or sitting for more than six hours in an eight hour day. Based in part on the VE's testimony, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy. AR 29.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

1  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).³  Applying this process in this case, the ALJ
2  found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of
3  her disability; (2) has an impairment or a combination of impairments that is considered "severe"
4  (obesity and diabetes) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3)
5  does not have an impairment or combination of impairments which meets or equals one of the
6  impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant
7  work; but (5) retains the RFC to perform a significant number of jobs.  AR 24-29.

8  Plaintiff argues that the ALJ erred in finding that her mental impairment was not severe.

## DISCUSSION

10  Plaintiff contends that the ALJ erred by determining, at step two, that her mental
11 impairment was not severe.  She admits that she is a malingerer, but contends that her antisocial
12 personality disorder is a separate mental disorder that should have been found severe.

13 Plaintiff bears the burden of proving that she is disabled.  Meanel v. Apfel, 172 F.3d 1111,
14 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512.  A person is disabled if his impairments are severe
15 and meet the durational requirement of twelve months.  20 C.F.R. §§ 404.1505, 404,1520(a).  A
16 severe impairment is one that significantly limits the physical or mental ability to perform basic
17 work activities.  20 C.F.R. § 404.1520(c).  Examples of basic work activities include carrying out
18 simple instructions, responding appropriately to usual work situations, dealing with changes in a
19 routine work setting, and performing ordinary physical functions like walking and sitting.  20
20 C.F.R. § 404.1521(b).

21 "An impairment ... may be found not severe only if the evidence establishes a slight
22 abnormality that has no more than a minimal effect on an individual's ability to work." Webb v.
23 Barnhart, 433 F.3d 683, 686 (9th Cir.2005) (internal quotation omitted).  The Commissioner has
24 stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or
25 combination of impairments on the individual's ability to do basic work activities, the sequential
26 evaluation should not end with the not severe evaluation step." Id.; SSR 85-28.  Step two, then,

27 ─────────────────
28  ³All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." SSR 85-28.

Here, the ALJ started his discussion of Plaintiff's mental impairment by citing the medical evidence, including a July 22, 2003, prison psychologist notation that Plaintiff had secondary gain issues and showed no evidence of impaired functioning. He also cited Dr. Musacco's February 2004 finding that Plaintiff was possibly malingering, as well as his diagnosis of antisocial personality features. He next cites Dr. Hirokawa's June 2005 opinion that Plaintiff was a partial malingerer but was possibly mentally retarded and suffered from antisocial personality disorder. Finally, the ALJ discussed the November 2006 evaluations performed by Dr. Ruddock, who found that Plaintiff was malingering but also suffered from antisocial personality disorder. AR 24-25.

From these opinions, the ALJ concluded that Plaintiff failed to provide any objective medical evidence indicating that she was more limited than the opinions of doctors who found that she could perform at least simple, repetitive work activity. AR 28.

Plaintiff argues that her antisocial personality disorder is a separate mental impairment with its own limitations. She does not object to the ALJ's finding that she was a malingerer, but contends that even with that finding, he should have concluded that her antisocial personality disorder was a severe impairment at step two. For the reasons that follows, the Court agrees.

The Supreme Court has determined that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). In light of this principle, it is well-settled that the step two severity inquiry is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of

regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").

With this standard in mind, the Court finds that the ALJ's conclusion was not supported by substantial evidence. Even though the ALJ determined that Plaintiff was malingering, the record contains evidence that Plaintiff suffered from significant social limitations that were caused by a documented, and separate, mental disorder. Indeed, the ALJ notes many times that Plaintiff was repeatedly diagnosed with antisocial personality disorder, but he wholly fails to discuss the social limitations that were attached to that diagnosis.

For example, although the ALJ cites Dr. Musacco's malingering finding, he ignores Dr. Musacco's belief that despite her malingering, Plaintiff appeared "to be genuinely irritable" and may have difficulty interacting appropriately with co-workers, supervisors, and the public. Dr. Musacco also believed that Plaintiff may be vulnerable to antisocial behaviors that would impact her ability to function in a work-like setting. AR 195.

The ALJ also cites Dr. Hirokawa's suspicion that Plaintiff was malingering, yet he fails to discuss Dr. Hirokawa's finding that although she exaggerated her cognitive performance and symptoms, "the claimant does appear to suffer from a mental disorder." AR 300. Dr. Hirokawa believed that Plaintiff may have been mildly mentally retarded. He continued, "[her] attempt to exaggerate her symptoms was so poor that this examiner feels that there are actual cognitive limitations which will severely restrict this individual from adequately functioning in society." AR 300. In terms of limitations, Dr. Hirokawa believed that although Plaintiff could perform simple, repetitive tasks, she would have difficulty working with others and accepting instructions from supervisors. Plaintiff would not be able to deal with various changes in the work setting and had a high likelihood of emotional deterioration in the work environment. Moreover, Plaintiff could not maintain regular attendance and would have difficulty getting along with others. Dr. Hirokawa concluded by stating that he "did not consider her exaggerated psychotic symptoms in making these assessments, but it was made more based upon her limited intellectual functioning, previous history, and reported compliance and difficulties by her daughter." AR 301.

1    Elsewhere, the ALJ found that the State Agency physicians found that Plaintiff could
2 perform simple, repetitive work. AR 28. While this is true, the ALJ did not address Dr. Luu's
3 belief, on two separate RFC assessments, that Plaintiff was moderately limited in her ability to
4 interact appropriately with the general public and had an *insufficient* ability to interact
5 appropriately with the general public. AR 200-202, 306-308.

6    By using Plaintiff's malingering to implicitly reject all aspects of Plaintiff's limitations,
7 some of which stemmed from a uncontroverted diagnosis of antisocial personality disorder, the
8 ALJ erred in his analysis. Defendant curiously suggests that there is "more than sufficient"
9 evidence to uphold the ALJ's finding, but this suggestion fails to recognize that the ALJ's
10 decision must be analyzed under the more narrow deferential standards of the step two analysis.
11 Defendant also suggests that the Court must uphold the decision where the analysis is open to
12 two different rational interpretations. Again, however, this is a step two issue, and such
13 deference does not apply. *Yuckert*, 841 F.3d at 306.

14    Based on the ALJ's incomplete analysis of the medical record and opinions, the Court
15 finds that he erred by concluding the sequential evaluation process at step two. The medical
16 evidence did not "clearly establish" non-severity and Plaintiff's claim should not have been
17 disposed of at this threshold step. SSR 85-28. While the Court is aware that the Commissioner
18 may ultimately determine that Plaintiff is not disabled, such a decision must be based on a proper
19 sequential analysis.

20                                              **REMAND**

21    Section 405(g) of Title 42 of the United States Code provides: "the court shall have the
22 power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,
23 or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."
24 In social security cases, the decision to remand to the Commissioner for further proceedings or
25 simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d
26 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original
27 administrative proceedings, a social security case should be remanded. Where, however, a
28 rehearing would simply delay receipt of benefits, reversal and an award of benefits is

appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, the Court finds that remand for further proceedings is proper to allow the ALJ to make a disability finding based on a complete sequential evaluation.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Brenda Carr and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 22, 2009**                       /s/ **Dennis L. Beck**
                                                                     UNITED STATES MAGISTRATE JUDGE